Dan R. CULLISON, Appellant,
(Plaintiff Below),

v.

Ernest W. MEDLEY, Doris Medley, Ron Medley, Sandy Medley, and Terry Simmons, Appellees. (Defendants Below).

No. 84 Sol 9104 CV 32.

Supreme Court of Indiana.

April 23, 1991.

Rudolph Wm. Savich, Bloomington, for appellant.

Robert C. Price, Price and Runnells, Bloomington, for appellees.

ON PETITION TO TRANSFER

KRAHULIK, Justice.

Dan R. Cullison (Appellant–Plaintiff below) petitions this Court to accept transfer of this cause in order to reverse the trial court's entry of summary judgment against him and in favor of the Appellees–Defendants below (collectively "the Medleys"). The Court of Appeals affirmed the entry of summary judgment. *Cullison v. Medley* (1990), Ind.App., 559 N.E.2d 619. For the reasons set forth below, we grant transfer, vacate the opinion of the Court of Appeals, reverse the entry of summary judgment and remand to the trial court.

The sole issue presented for review is whether the "impact rule" prohibits Cullison from recovering under any of several legal theories for emotional distress resulting from the Medleys alleged wrongdoings. In his four-count complaint, Cullison alleged trespass, assault, harrassment, and intentional infliction of emotional distress and sought to recover damages for his emotional and psychological injury.

In reviewing the propriety of the trial court's entry of summary judgment, we apply the same standard applicable in the trial court. We must construe the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the non-moving party. Only if such evidence shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should the summary judgment be affirmed. Ind.Trial Rule 56; *Ayres v. Indiana Heights Volunteer Fire Dept.* (1986), Ind., 493 N.E.2d 1229, 1234. We conclude that the evidence presented to the trial court construed in favor of the non-moving party, Cullison, establishes questions of fact which require jury resolution on three of the four counts alleged in Cullison's complaint.

According to Cullison's deposition testimony, on February 2, 1986, he encountered Sandy, the 16–year–old daughter of Ernest, in a Linton, Indiana, grocery store parking lot. They exchanged pleasantries and Cullison invited her to have a Coke with him and to come to his home to talk further. A few hours later, someone knocked on the door of his mobile home. Cullison got out of bed and answered the door. He testified that he saw a person standing in the darkness who said that she wanted to talk to him. Cullison answered that he would have to get dressed because he had been in bed. Cullison went back to his bedroom, dressed, and returned to the darkened living room of his trailer. When he entered the living room and turned the lights on, he was confronted by Sandy Medley, as well as by father Ernest, brother Ron, mother Doris, and brother-in-law Terry Simmons. Ernest was on crutches due to knee surgery and had a revolver in a holster strapped to his thigh. Cullison testified that Sandy called him a "pervert" and told him he was "sick," mother Doris berated him while keeping her hand in her pocket, convincing Cullison that she also was carrying a pistol. Ron and Terry said nothing to Cullison, but their presence in his trailer home further intimidated him. Primarily, however, Cullison's attention was

riveted to the gun carried by Ernest. Cullison testified that, while Ernest never withdrew the gun from his holster, he "grabbed for the gun a few times and shook the gun" at plaintiff while threatening to "jump astraddle" of Cullison if he did not leave Sandy alone. Cullison testified that Ernest "kept grabbing at it with his hand, like he was going to take it out," and "took it to mean he was going to shoot me" when Ernest threatened to "jump astraddle" of Cullison. Although no one actually touched Cullison, his testimony was that he feared he was about to be shot throughout the episode because Ernest kept moving his hand toward the gun as if to draw the revolver from the holster while threatening Cullison to leave Sandy alone.

As the Medleys were leaving, Cullison suffered chest pains and feared that he was having a heart attack. Approximately two months later, Cullison testified that Ernest glared at him in a menacing manner while again armed with a handgun at a restaurant in Linton. On one of these occasions, Ernest stood next to the booth where Cullison was seated while wearing a pistol and a holster approximately one foot from Cullison's face. Shortly after the incident at his home, Cullison learned that Ernest had previously shot a man. This added greatly to his fear and apprehension of Ernest on the later occasions when Ernest glared at him and stood next to the booth at which he was seated while armed with a handgun in a holster.

Cullison testified that as a result of the incident, he sought psychological counseling and therapy and continued to see a therapist for approximately 18 months. Additionally, Cullison sought psychiatric help and received prescription medication which prevented him from operating power tools or driving an automobile, thus injuring Cullison in his sole proprietorship construction business. Additionally, Cullison testified that he suffered from nervousness, depression, sleeplessness, inability to concentrate and impotency following his run-in with the Medleys.

## I. *Trespass*

█ Cullison alleged that the Medleys trespassed when they entered his trailer without his permission after he had gone to the back of the trailer to dress. Every unauthorized entry on the land of another constitutes a trespass. *State ex rel. McPherson v. Beckner* (1892), 132 Ind. 371, 31 N.E. 950; *Evans v. State* (1986) Ind. App. 493 N.E.2d 806. Here, Cullison did not directly or impliedly invite the five members of the Medley family to enter into his trailer home. Clearly, Cullison's complaint properly alleged an actionable count of trespass. The Court of Appeals agreed that a trespass may have occurred and that Cullison may be entitled to receive nominal damages, but relying upon *Indiana Motorcycle Association v. Hudson* (1980), Ind. App., 399 N.E.2d 775, decided that absent a showing of physical injury caused by the defendants or evidence that defendants' behavior was willful, callous or malicious, an action for trespass would not support the emotional distress damages requested by Cullison. The Court of Appeals concluded that because there was no physical injury and the Medleys' actions could not be said to be malicious, callous, or willful, Cullison's claim for mental injuries occasioned by the trespass must fail.

The Court of Appeals accurately stated the rule of law and its justification:

> The general rule in Indiana, known as the impact rule, is that damages for mental anguish are recoverable only when accompanied by and resulting from a physical injury. *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind. App. 315, 357 N.E.2d 247, *modified on other grounds*, 175 Ind.App. 1, 369 N.E.2d 947. The rationale behind this rule is that absent physical injury, mental anguish is speculative, subject to exaggeration, likely to lead to fictitious claims, and often so unforeseeable that there is no rational basis for awarding damages.

559 N.E.2d at 621. The Court of Appeals applied this rule and rationale to the court in Cullison's complaint alleging trespass.

We now conclude that the rationale for this rule, whatever its historical foundation, is no longer valid and, therefore, the so-called "impact rule" does not apply to prohibit recovery for emotional distress when sustained in the course of a tortious trespass. When one intentionally invades the premises of another in such a way as to provoke a reasonably foreseeable emotional disturbance or trauma of the rightful occupier of the premises, the occupier may, in addition to recovering damages to the realty, if any, recover damages for such emotional injury. The mere fact of a physical injury, however minor, does not make mental distress damages any less speculative, subject to exaggeration, or likely to lead to fictitious claims. In fact, the experience in this state is that juries are equally qualified to judge someone's emotional injury as they are to judge someone's pain and suffering or future pain and suffering, and the presence or absence of some physical injury does nothing to alleviate the jury's burden in deciding whether the elements of mental suffering are present. We note there are those who argue that allowing recovery for mental damages will result in an inundation of the court system with such claims, but we do not believe that the workload occasioned by some possible increase in legitimate claims is any reason to deny or prohibit such claims.

In the present case, the complaint alleges trespass and the testimony of Cullison supports such allegations. It will be for the jury to determine whether the trespass occurred and whether such intentional trespass foreseeably would provoke an emotional disturbance or trauma. Summary judgment was entered inappropriately on count one of Cullison's complaint.

## II. *Assault*

In count two of his complaint, Cullison alleged an assault. The Court of Appeals decided that, because Ernest never removed his gun from the holster, his threat that he was going to "jump astraddle" of Cullison constituted conditional language which did not express any present intent to harm Cullison and, therefore, was not an assault. Further, the Court of Appeals decided that even if it were to find an assault, summary judgment was still appropriate because Cullison alleged only emotional distress and made no showing that the Medleys' actions were malicious, callous, or willful or that the alleged injuries he suffered were a foreseeable result of the Medleys' conduct. We disagree.

It is axiomatic that assault, unlike battery, is effectuated when one acts intending to cause a harmful or offensive contact with the person of the other or an imminent apprehension of such contact. Restatement (Second) of Torts § 21 (1965). It is the right to be free from the apprehension of a battery which is protected by the tort action which we call an assault. As this Court held approximately 90 years ago in *Kline v. Kline* (1901), 158 Ind. 602, 64 N.E. 9, an assault constitutes "a touching of the mind, if not of the body." Because it is a touching of the mind, as opposed to the body, the damages which are recoverable for an assault are damages for mental trauma and distress. "Any act of such a nature as to excite an apprehension of a battery may constitute an assault. It is an assault to shake a fist under another's nose, to aim or strike at him with a weapon, or to hold it in a threatening position, to rise or advance to strike another, to surround him with a display of force...." W. Prosser & J. Keaton, Prosser and Keaton on Torts § 10 (5th ed. 1984). Additionally, the apprehension must be one which would normally be aroused in the mind of a reasonable person. *Id.* Finally, the tort is complete with the invasion of the plaintiff's mental peace.

The facts alleged and testified to by Cullison could, if believed, entitle him to recover for an assault against the Medleys. A jury could reasonably conclude that the Medleys intended to frighten Cullison by surrounding him in his trailer and threatening him with bodily harm while one of them was armed with a revolver, even if that revolver was not removed from the its holster. Cullison testified that Ernest kept grabbing at the pistol as if he were going to take it out, and that Cullison thought

Ernest was going to shoot him. It is for the jury to determine whether Cullison's apprehension of being shot or otherwise injured was one which would normally be aroused in the mind of a reasonable person. It was error for the trial court to enter summary judgment on the count two allegation of assault.

### III. *Invasion of Privacy*

The third count of Cullison's complaint sought to recover damages for "harrassment", but in his brief to the Court of Appeals, Cullison argued that count III more properly alleged the tort of invasion of privacy. Cullison claims that the trial court erred in entering summary judgment against him on this count. The Court of Appeals decided that he had waived this issue by not briefing it at the trial court level but, nevertheless, decided that the facts did not rise to the level of "outrageous wrongful intrusion into one's private activities." 559 N.E.2d at 624. Again, we disagree. The tort of invasion of privacy encompasses four separate forms; viz, appropriation, intrusion, public disclosure of private facts, and false light in the public eye. *Prosser and Keaton, supra* § 117. When the invasion of a plaintiff's right to privacy takes the form of intrusion, it consists of an intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search. *Id.* Here, the evidence according to Cullison's testimony, was that he did not invite any of the Medleys into his home and was apprehensive to discover all five of them standing in his darkened living room when he turned on the light. This may constitute an intrusive invasion of Cullison's right of privacy. The allegations that Ernest harrassed Cullison in the Hardee's restaurant or that Sandy and her mother harrassed Cullison by walking past his home in a taunting manner would not constitute an actionable claim for invasion of privacy because plaintiff has no legal right to be left alone on a public street or in a public place. For that reason and because the events which occurred inside the trailer also constitute a trespass, we hold that Cullison cannot simultaneously maintain his action for invasion of privacy and for trespass. For those reasons, we affirm the trial court's entry of summary judgment on this count.

### IV. *Intentional Infliction of Emotional Distress*

Count four alleges an intentional infliction of emotional distress. This tort has not been recognized in this state. The definition of the tort of intentional infliction of emotional distress is that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress...." Restatement (Second) of Torts § 46 (1965). It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress. We hold that under proper circumstances, liability will attach to a defendant for an intentional infliction of emotional distress, but the facts in this case do not support a finding that the Medleys intended to cause emotional injury to Cullison. Cullison points to evidence that the Medleys knew that he "disliked" guns and, therefore, argues that a jury could infer from this knowledge that Ernest's wearing of a gun was intended to inflict emotional injury on Cullison. We believe that this fact, standing alone, cannot be stretched into such an inference without breaking. The trial court properly entered summary judgment on count four of Cullison's complaint.

### CONCLUSION

For all of the reasons stated above, we hereby accept transfer of this cause, vacate the opinion of the Court of Appeals, reverse the entry of summary judgment as to the counts alleging trespass and assault, and affirm the entry of summary judgment on the counts alleging invasion of privacy and intentional infliction of emotional distress, and remand this cause to the trial court.

SHEPARD, C.J., and DeBRULER, and DICKSON, JJ., concur.

GIVAN, J., dissents without opinion.