Donald J. LINDSEY and Jacquelyn Lindsey, Appellants–Plaintiffs,

v.

Johannes DeGROOT, Egberdien DeGroot, and DeGroot Dairy, LLC, Appellees–Defendants.

No. 35A02–0805–CV–470.

Court of Appeals of Indiana.

Jan. 12, 2009.

stances." Model Penal Code § 5.01(2)(e).

David C. Van Gilder, Andrew P. Simmons, Van Gilder & Trzynka, P.C., Fort Wayne, IN, Attorney for Appellants.

Peter M. Racher, Todd J. Janzen, Plews Shadley Racher & Braun LLP, Indianapolis, Josef Musser, Spitzer Herriman Stephenson Holderead, Musser & Conner, LLP, Marion, IN, Attorney for Appellees.

Joseph A. Miller, Seymour, IN, Attorney for Amicus Curiae the Indiana Poultry Association, The Indiana Beef Cattle Association, The Indiana Pork Advocacy Coalition, and the Indiana Professional Dairy Association.

Sarah J. MacLaughlin, Justin T. Schneider, Mark J. Thornburg, Indiana Agricultural Law Foundation, Inc. Indianapolis, IN, Attorneys for Amicus Curiae Indiana Agricultural Law Foundation, Inc.

Daniel P. McInerny, Bryan H. Babb, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Soybean Alliance.

## OPINION

BRADFORD, Judge.

Appellants–Plaintiffs Donald J. Lindsey and Jacquelyn Lindsey (collectively, "the Lindseys") appeal from the trial courts

order granting summary judgment in favor of Johannes DeGroot, Egberdien DeGroot, and DeGroot Dairy, LLC (collectively, "DeGroot Dairy"). On appeal, the Lindseys contend that the trial court incorrectly interpreted and applied the Indiana Right to Farm Act to the facts of this case and that the trial court's award of summary judgment is erroneous because issues of material fact remain with regard to their criminal trespass, criminal mischief, and intentional infliction of emotional distress claims. Concluding that the trial court's award of summary judgment in favor of DeGroot Dairy was proper, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

In 1998, the Lindseys purchased approximately ten acres of undeveloped woods in rural Huntington County, located at 1491 South 900 West, Andrews, Indiana. After purchasing the property, the Lindseys constructed their 4000 square foot home, which included a veranda and an indoor swimming pool. At various times since purchasing the property, the Lindseys have had a number of animals living on their property, including four horses, three dogs, a bird, and a rabbit. The nature of the landscape surrounding the Lindseys' property was, at all times relevant to this appeal, agricultural, and a number of farmers in the immediate area own livestock.

In 2001, Johannes DeGroot, a Dutch national, purchased an operational hog farm from John and Joy Baker, located at 8373 West 200 South, Andrews, Indiana, for the purpose of opening a dairy, and relocated his family from the Netherlands to Andrews, Indiana. DeGroot contracted with Vreba–Hoff Dairy Development LLC for the construction of the new barns and equipment necessary to run the dairy operation. DeGroot Dairy raises approximately 1500 milking cows and 100 dry cows and dairy calves. DeGroot Dairy began its milking operations on June 24, 2002.

DeGroot Dairy is a regulated entity under the Indiana Department of Environmental Management's ("IDEM") Confined Feeding Operation ("CFO") regulations and operates under a CFO approval, approval number AW 5076. Throughout the course of the dairy's operation, IDEM has periodically alleged violations of CFO regulations. None of IDEM's past allegations against DeGroot Dairy has ever been substantiated.

DeGroot Dairy owns a farm field directly north of the Lindseys' property, consisting of approximately 68.09 acres, which is regularly used for planting corn, soybeans, and wheat. A grass strip runs along the boundary between the two properties. Following allegations by the Lindseys that an employee or agent of DeGroot Dairy had trespassed upon the grass strip, Johannes DeGroot hired Larry E. Manship, a licensed surveyor from Marion, Indiana, to survey the border between the Lindseys' property and the DeGroot Dairy cornfield. On August 24, 2004, Manship prepared a written survey of the properties in question. The Manship survey indicated that the Lindseys were mistaken about the ownership of the grass strip and that while the Lindseys own the southern half of the grass strip, DeGroot Dairy owns the northern half of the grass strip. Although the Lindseys claim that they do not agree with the Manship survey, they have never arranged for another survey to

---

1. DeGroot Dairy has filed a motion for oral argument, which we deny in an order issued simultaneously with this decision.

be conducted. Also in response to the Lindseys' allegations, Johannes DeGroot instructed employees to stay "well clear" of the Lindseys' property. Appellant's App. p. 190.

On December 9, 2003, the Lindseys filed suit against DeGroot Dairy seeking to enjoin the dairy from further operation and for compensation for nuisance, negligence, trespass, criminal mischief, and intentional infliction of emotional distress. DeGroot Dairy filed a motion for summary judgment on September 17, 2007. A hearing was held on DeGroot Dairy's motion on February 25, 2008. On April 24, 2008, the court issued an order granting summary judgment to DeGroot Dairy. In its summary judgment order, the trial court determined that the Indiana Right to Farm Act was constitutional and applied to the instant action, barring the Lindseys' nuisance claims. The trial court also determined that no genuine issues of material fact existed regarding the Lindseys' trespass, criminal mischief, and intentional infliction of emotional distress claims. This appeal follows.[2]

## DISCUSSION AND DECISION

### I. Standard of Review

■ "Summary judgment proceedings are primarily designed to provide a speedy determination of whether a genuine issue of fact is present and must be tried." *Inland Steel v. Pequignot*, 608 N.E.2d 1378, 1381 (Ind.Ct.App.1993), *trans. denied.* "It is not itself a trial, but is for the determination of whether there is a genuine issue for trial." *Id.*

Summary judgment is appropriate only when the evidentiary matter designated to the trial court shows that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. In reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standards as the trial court and review all the pleadings, depositions, admissions, answers to interrogatories, and any affidavits designated to the trial court in the light most favorable to the nonmovant. The movant bears the burden of proving the propriety of summary judgment, and all rational assertions of fact and reasonable inferences to be resolved therefrom are deemed to be true and are viewed in the nonmovant's favor.

The movant must establish the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law, before the burden shifts to the nonmovant to file affidavits or other materials showing the existence of a genuine issue for resolution by the fact-finder. A genuine issue of material fact exists where facts concerning an issue which would dispose of litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue.

A defendant is entitled to judgment as a matter of law when he shows that the undisputed material facts negate at least one element of the plaintiff's claim for relief. A court must grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

---

**2.** We note that this is the second appeal which has come before this court involving these same parties since 2007.

*Briggs v. Finley,* 631 N.E.2d 959, 963 (Ind. Ct.App.1994), *trans. denied* (citations omitted). "In reviewing a motion for summary judgment, we apply the same standard as the trial court." *Inland Steel,* 608 N.E.2d at 1381. "Thus, no deference is given by us to the trial courts judgment." *Id.*

## II. Constitutionality and Application of the Right to Farm Act

The Indiana Right to Farm Act (the "Act") was adopted by the General Assembly in an attempt to limit the circumstances under which agricultural operations could become subject to nuisance suits. The Act, codified at Indiana Code section 32–30–6–9 (2007), provides the following:

(a) This section does not apply if a nuisance results from the negligent operation of an agricultural or industrial operation or its appurtenances.

(b) The general assembly declares that it is the policy of the state to conserve, protect, and encourage the development and improvement of its agricultural land for the production of food and other agricultural products.... It is the purpose of this section to reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance.

\* \* \* \*

(d) An agricultural or industrial operation or any of its appurtenances is not and does not become a nuisance, private or public, by any changed conditions in the vicinity of the locality after the agricultural or industrial operation, as the case may be, has been in operation continuously on the locality for more than one (1) year if the following conditions exist:

(1) There is no significant change in the type of operation. A significant change in the type of agricultural operation does not include the following:

(A) The conversion from one type of agricultural operation to another type of agricultural operation.

(B) A change in the ownership or the size of the agricultural operation.

(C) The:

(i) enrollment; or

(ii) reduction or cessation of participation; of the agricultural operation in a government program.

(D) Adoption of new technology by the agricultural operation.

(2) The operation would not have been a nuisance at the time the agricultural or industrial operation began on that locality.

The General Assembly defined an agricultural operation as "any facility used for the production of crops, livestock, poultry, livestock products, poultry products, or horticultural products or for growing timber." Ind.Code § 32–30–6–1 (2003). DeGroot Dairy, a farming operation that produces milk as well as crops, is clearly an agricultural operation for the purposes of the Indiana Right to Farm Act.

### A. Whether the Indiana Right to Farm Act is Constitutional

■ The Lindseys first contend that the Act is unconstitutional, arguing that the Act amounts to an unconstitutional taking of their property without just compensation because it essentially awards DeGroot Dairy an easement over their property. "Article I, Section 21 of the Indiana Constitution includes a prohibition against the taking of property without just compensation." *Cheatham v. Pohle,* 789 N.E.2d 467, 472 (Ind.2003). "The Fifth Amendment to the United States Constitution includes the same proscription, and

applies to the states through the Fourteenth Amendment." *Id.* Therefore, both the federal and Indiana constitutions provide that " 'no person's property shall be taken by law, without just compensation.' " *Id.* at 473 (citing Ind. Const. art. I, § 21). "Only 'property' is protected from taking under either clause." *Id.* "To be a taking in the constitutional sense, the state action at issue must be more than a consequential limitation on the use or enjoyment of property; a taking involves an actual interference with a property right." *Gorka v. Sullivan,* 671 N.E.2d 122, 132 (Ind.Ct.App. 1996) (citing *Indiana Toll Rd. Comm'n v. Jankovich,* 244 Ind. 574, 582, 193 N.E.2d 237, 240 (1963); *Johnson v. Kosciusko County Drainage Bd.,* 594 N.E.2d 798, 804 (Ind.Ct.App.1992)), *trans. denied.*

In support of their argument, the Lindseys rely upon the Iowa Supreme Court's decision in *Bormann v. Bd. of Supervisors in and for Kossuth County,* 584 N.W.2d 309 (Iowa 1998). In *Bormann,* a group of property owners challenged an action by the Board of Supervisors (the "Board") in creating an agricultural area near their property, arguing that the Board's action constituted a taking of their land without just compensation because Iowa's agricultural land preservation statute granted farms and farmers immunity from nuisance suits, effectively granting the farms and farmers the right to maintain a nuisance. *Bormann,* 584 N.W.2d at 313. The Iowa Supreme Court agreed and concluded that in light of Iowas longstanding common law proposition, dating back to the Iowa Supreme Court's 1895 decision in *Churchill v. Burlington Water Co.,* 94 Iowa 89, 62 N.W. 646 (Iowa 1895), that the right to maintain a nuisance is an easement, as well as the proposition that easements are property interests subject to the just compensation requirements of both the federal and Iowa constitutions, the portion of Iowa's agricultural land preser-

vation act granting a farm or a farm operation located in an agricultural area immunity from nuisance actions violated both the federal and the Iowa constitutions. *Id.* at 321.

In *Moon v. North Idaho Farmers Ass'n,* 140 Idaho 536, 96 P.3d 637 (2004), the plaintiffs challenged the constitutionality of the Idaho counterpart to our Right to Farm Act, claiming that under the Iowa Supreme Courts holding in *Bormann,* the immunity granted to the farmers under the Idaho act created an easement in favor of the farmers over their property, and therefore violated the Takings Clause of both the Idaho and federal constitutions. The Idaho Supreme Court, however, refused to apply the Iowa Supreme Court's holding in *Bormann* because the court found that there was no direct authority in Idaho holding that the right to maintain a nuisance is an easement. 96 P.3d at 644. The Idaho Supreme Court also expressly declined to hold that the nuisance immunity provision included in the Idaho counterpart to our Right to Farm Act created an easement in favor of the farmers. *Id.* at 645. The Idaho Supreme Court concluded that the provision of the Idaho counterpart to our Right to Farm Act granting immunity to the farmers "[did] not represent an unconstitutional taking under either the state or federal constitution." *Id.* at 646.

Likewise, in *Barrera v. Hondo Creek Cattle Co.,* 132 S.W.3d 544 (Tex.App.2004), the plaintiffs challenged the Texas counterpart to our Right to Farm Act claiming that the provision limiting the circumstances under which a nuisance claim could be brought against a farming operation violated both the Texas and federal constitutions because the limitation amounted to a "taking." The Texas Court of Appeals rejected plaintiff's claim and concluded that the plaintiffs had failed to establish

the required elements of a taking. 132 S.W.2d at 549.

We note that like the Idaho and Texas courts, we have found nothing to suggest that Indiana has adopted the seemingly unique Iowa holding that the right to maintain a nuisance is an easement, and the Lindseys have failed to explain why we should. Therefore, we expressly decline the Lindseys' invitation to adopt Iowa's proposition that the right to maintain a nuisance contained in the Act creates an easement in favor of DeGroot Dairy. Having rejected the claim that the Act effectively grants an easement to DeGroot Dairy over the Lindseys' property, we turn our attention to the application of the Act to the instant matter.

## B. Whether the Indiana Right to Farm Act Bars the Lindseys' Nuisance Claim

■■■ The underlying basis of the Lindseys' nuisance claim against DeGroot Dairy is that the operation of DeGroot Dairy is a nuisance that interferes with the Lindseys' use and enjoyment of their property. Indiana law defines a nuisance as "[w]hatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property." Ind.Code § 32–30–6–6 (2003). When deciding whether or not the use of property amounts to a nuisance, it is necessary to balance the competing interests of the affected landowners, and in doing so, we must use a common sense approach. *Shatto v. McNulty*, 509 N.E.2d 897, 898–99 (Ind.Ct.App.1987).

> While mere annoyances or inconveniences will not support an action on account of a nuisance, one may not use his property for his own profit so as to damage, confiscate, or destroy the property of his neighbor. Even a lawful business may be conducted in such a manner or be so situated as to become a nuisance. Whether the act complained of is in reality a nuisance, or not, is measured by ordinary sensibilities, tastes, and habits in light of the circumstances of each case.

*Id.* at 899.

■■■ Here, DeGroot Dairy began milking operations on June 24, 2002. Approximately eighteen months later, on December 9, 2003, the Lindseys filed suit alleging that the dairy was a nuisance. Because DeGroot Dairy had been in operation for more than one year when the Lindseys filed suit, the Act applies and bars the Lindseys' nuisance suit unless there has been a significant change in the type of operation, the operation would have been a nuisance at the time the operation began in its current locality, or the nuisance results from the negligent operation of the agricultural operation.

■■■ On appeal, the Lindseys assert that there has been a significant change in the type of operation. The record, however, establishes that the Lindseys did not allege that a significant change in the type of operation had occurred before the trial court. "Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived." *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind.Ct.App.2004). In the instant matter, the Lindseys' response to DeGroot Dairy's motion for summary judgment stated that "[t]he Lindseys do not take issue with the 'type' of farm DeGroot operates, but rather, with its negligent operation." Appellant's App. p. 68. The Lindseys' response further stated that "DeGroot Dairy has only itself to blame for operating in a negligent manner and abandoning the protection of the Right to Farm Act." Appellant's App. p. 69. Because the Lindseys did not challenge the

type of operation or allege any significant change in the type of operation before the trial court, the Lindseys have waived this claim on appeal. *See id.* Likewise, the Lindseys failed to argue before the trial court, and have therefore waived their claim, that the Act should not apply because the dairy would have been a nuisance at the time the agricultural operation began in that locality. *See id.* Therefore, we conclude that the Lindseys' nuisance claim is barred by the Act unless they can establish that the alleged nuisance resulted from the negligent operation of DeGroot Dairy.

### C. Whether Application of the Right to Farm Act was Improper Because the Claimed Nuisance Resulted from the Negligent Operation of De-Groot Dairy

■ The Lindseys next contend that the application of the Act was improper because their claimed nuisance resulted from the negligent operation of DeGroot Dairy. The Lindseys' claim of negligence is based exclusively on DeGroot Dairys alleged violations of IDEM's CFO regulations.[3]

■ Under Indiana law, "[i]t is clear that statutory negligence is not predicated upon any test for ordinary or reasonable care, but rather is founded in the defendant's violation of a specific requirement of law." *Smith v. Cook,* 172 Ind.App. 610, 614, 361 N.E.2d 197, 199 (1977). "An unexcused or unjustified violation of a duty dictated by a statute is negligence per se." *Town of Montezuma v. Downs,* 685 N.E.2d 108, 112 (Ind.Ct.App.1997). We note, how-

ever, that negligence *per se* does not mean that there is liability *per se. Inland Steel,* 608 N.E.2d at 1383.

The violation of statutory duty is not actionable negligence unless it is also the proximate cause of the injury. The violation of a statute raises no liability for injury to another unless the injury was in some manner the result of such violation. In order to find that an injury was the proximate result of a statutory violation, the injury must have been a foreseeable consequence of the violation and would not have occurred if the requirements of the statute had been observed.

*Id.* (citations omitted) (emphasis in original). Therefore, in the instant matter, assuming for the purpose of summary judgment that DeGroot Dairy committed the statutory violations alleged in the preliminary injunction and that DeGroot Dairy owed a statutory duty to the Lindseys, the statutory violations may be considered as evidence of negligence on behalf of De-Groot Dairy with respect to the Lindseys' claims if DeGroot Dairy's statutory violations were the proximate cause of the Lindseys' claimed injury.

The Lindseys assert that DeGroot Dairy is a nuisance because the noise and smells associated with the Dairy have interfered with the comfortable enjoyment of their property. The Lindseys further assert that the alleged statutory violations discussed in the preliminary injunction granted to IDEM against DeGroot Dairy were the proximate cause of their claimed injury. The preliminary injunction, however, was granted in response to a manure spill and manure runoff which occurred approx-

---

**3.** We note that although we question the admissibility of the court order granting IDEM's preliminary injunction which was subsequently vacated when IDEM dismissed all allegations against DeGroot Dairy, for the purpose of summary judgment, we will consider the

allegations in IDEM's preliminary injunction to be true. *See Inland Steel,* 608 N.E.2d at 1381 (stating that facts and inferences must be liberally construed in favor of the nonmovant and all doubts must be resolved in the nonmovant's favor.)

imately one mile downstream from the Lindseys' property on April 9, 2007 and April 11, 2007. The injunction sought to protect against the potential contamination of the ground water supply. The Lindseys did not designate any evidence to support an inference that the alleged statutory violations had affected their groundwater supply in any way. The Lindseys failed to counter DeGroot Dairy's designated evidence which established that the Lindseys had tested their water supply on two separate occasions, and both of these tests were negative for any contamination. Likewise, the Lindseys failed to designate any evidence suggesting that the alleged statutory violations were the proximate cause of their claimed injury. Thus, we conclude that the Lindseys have failed to demonstrate a genuine issue of material fact supporting their contention that the statutory violations alleged in the preliminary injunction were the proximate cause of their claimed injury.

The Lindseys also assert that violations which allegedly occurred in 2002 have interfered with their use and enjoyment of their property.[4] In response, DeGroot Dairy designated the Lindseys' testimony showing a lack of connection between DeGroot Dairy's alleged 2002 CFO violations and the Lindseys' claimed injury. In her deposition, Jacquelyn Lindsey testified about how the alleged regulatory violations against DeGroot Dairy impacted the Lindseys and their home:

Q: One [alleged violation was] on February 6, 2002, it says, that a field tile was severed. Are you familiar with that?

A: No. It may have been an IDEM notice.

Q: On the same date, there is an allegation from IDEM that groundwater was flowing into a lagoon. Are you familiar with that?

A: No.

Q: On April 17, 2002, it says that a broken field tile was not repaired. Are you familiar with that allegation?

A: No.

Q: On July 8, 2002, it says there was one dead cow and one dead calf on site. Are you familiar with that allegation?

A: I'm familiar with the allegation. I did not see it myself.

Q: Of those four that I've just mentioned, do any of those affect your property?

A: The severing of the field tile could impact our property by excess water coming into our property that did not before.

Q: Do you know if that happened following February 6, 2002?

A: I couldn't say. I don't know yes or no.

Q: On July 23rd, 2002, it says there was an unpermitted discharge. Are you familiar with that?

A: Only from what I've seen in records. We weren't the neighbor.

Q: Did that affect your property at all?

A: I couldnt say offhand.

Appellee's App. p. 76. Mr. Lindsey agreed with his wife's testimony. Mr. Lindsey added that he believes that every violation "devalues" his home, but designated no evidence supporting this belief. Appellee's App. p. 95. Mr. Lindsey admitted that as of the date of their most recent appraisal, the value of the Lindseys' home had increased to more than $400,000 from prior

4. Although neither party designated evidence describing any alleged violations which might have occurred in 2002, for the purpose of summary judgment, we will consider the allegation that DeGroot Dairy committed CFO violations in 2002 to be true.

appraisals of $280,000 and $310,000. Moreover, the Lindseys failed to designate any evidence suggesting that the violations alleged against DeGroot Dairy in 2002 impacted their property or that their claimed injury was a foreseeable consequence of the alleged violations. Thus, we conclude that the Lindseys have failed to designate any evidence suggesting that their claimed injury, the loss of the use and enjoyment of their property because of the noise and sounds associated with the Dairy, was a foreseeable consequence of the alleged statutory violations. *See Inland Steel*, 608 N.E.2d at 1383. We also conclude that the Lindseys have failed to designate any evidence suggesting that their claimed injury would not have occurred if DeGroot Dairy had observed the statutory requirements. *See id.*

Having concluded that the Lindseys failed to designate any evidence establishing that their claimed injury was a foreseeable consequence of the alleged violations and that their claimed injury would not have occurred had the requirements of the statute been observed, we conclude that the Lindseys have failed to create a genuine issue of fact regarding whether DeGroot Dairy's alleged statutory violations were the proximate cause of the Lindseys' claimed injury. *See id.* Furthermore, having concluded that DeGroot Dairy's statutory violations were not the proximate cause of the Lindseys' alleged injury, we conclude that DeGroot Dairy's alleged violation of a statute does not give rise to liability for the Lindseys' claimed injury, and because the Lindseys have alleged no general claims of negligence, they cannot establish that the claimed nuisance results from the negligent operation of DeGroot Dairy. Therefore, there is no issue of material fact as to whether the Indiana Right to Farm Act applies, and the trial court correctly awarded DeGroot Dairy summary judgment on the Lindseys' nuisance claim.

### III. Challenges to Order Granting Summary Judgment

### A. Whether an Issue of Material Fact Remains Precluding Summary Judgment on the Lindseys' Trespass Claim

■ The Lindseys next contend that the trial court erred in granting summary judgment in favor of DeGroot Dairy with regard to their trespass claim. Specifically, the Lindseys claim that the "parties dispute over ownership of the Grass Strip alone is sufficient to withstand summary judgment." Appellant's Br. p. 18. DeGroot Dairy counters, arguing that summary judgment was appropriate because evidence designated to the trial court creates no genuine issue of material fact.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Ind. Trial Rule 56(E). Conclusory statements or mere assertions do not constitute the type of factual showing necessary under Trial Rule 56(E) to avoid summary judgment. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 139 (Ind.Ct.App.1993), *trans. denied.*

In order to succeed on their claim of trespass, the Lindseys must prove that (a) they were in possession of the land in question, and (2) DeGroot entered said land without right. *Hawke v. Maus*, 226 N.E.2d 713, 717 (Ind.Ct.App.1967). Here, however, DeGroot Dairy designated Man-

ship's affidavit in support of its motion for summary judgment. Manship's affidavit established that DeGroot Dairy had hired him to complete a survey of the "grass strip" and that after conducting said survey, he determined that "it appears that the property line in question angles across the grass strip" and that "one-half of the grass strip is on the DeGroot Dairy side of the property boundary and is part of the DeGroot Cornfield and not a part of the Lindseys' property and one-half is on the Lindsey property." Appellee's App. 155. The alleged trespass occurred on the northern half of the grass strip. The Lindseys designated no evidence disputing the Manship affidavit but merely stated in their response brief that they "believe[d] that the DeGroots deliberately used farm machinery on their property knowing it would interfere with their use and enjoyment of the land." Appellant's App. p. 74. The Lindseys' belief, however, does not constitute the type of factual showing necessary to avoid summary judgment. *See Otto,* 612 N.E.2d at 139. Because the Lindseys failed to set forth specific facts demonstrating the existence of a genuinely disputed issue relating to the ownership of the grass strip, which would preclude summary judgment, we conclude that the trial court's award of summary judgment to DeGroot Dairy on this ground was proper. *See* T.R. 56(E); *Otto,* 612 N.E.2d at 139.

**B. Whether an Issue of Material Fact Remains Precluding Summary Judgment on the Lindseys' Criminal Mischief Claim**

The Lindseys also contend that the trial court erred in granting summary judgment in favor of DeGroot Dairy with regard to their criminal mischief claim. Specifically, the Lindseys claim that "[t]here is clearly a dispute about the correct interpretation of the statute and its application to DeGroots actions." Appellant's Br. p. 20.

The Lindseys assert that they are entitled to damages for criminal mischief on behalf of DeGroot Dairy because of the tractor ruts, manure spillage, and flies left on their property by either the DeGroots or their agents as a result of the alleged trespass on September 16, 2003. Criminal mischief is committed by a person who:

(1) recklessly, knowingly, or intentionally damages or defaces property of another person without the other persons consent; or

(2) knowingly or intentionally causes another to suffer pecuniary loss by deception or by an expression of intention to injure another person or to damage the property or to impair the rights of another person; commits criminal mischief, a Class B misdemeanor. However, the offense is:

(A) a Class A misdemeanor if:

(i) the pecuniary loss is at least two hundred fifty dollars ($250) but less than two thousand five hundred dollars ($2,500) . . .

Ind.Code § 35–43–1–2 (2003). "If a person suffers a pecuniary loss as a result of a violation of IC 35–43 . . . the person may bring a civil action against the person who caused the loss." Ind.Code § 34–24–3–1 (2003).

In order to be successful on their claim of criminal mischief, the Lindseys must establish that DeGroot Dairy recklessly, knowingly, or intentionally damaged or defaced their property. We observe, however, that the Lindseys have failed to designate any evidence establishing that DeGroot Dairy recklessly, knowingly, or intentionally "left" any flies on the Lindseys' property. We further observe that like the above discussed trespass claim, the basis of the Lindseys' criminal mischief claim stems from the alleged trespass upon the grass strip by DeGroot Dairy. Having concluded above that the Lindseys have failed to designate any evi-

dence refuting the Manship Affidavit which establishes that DeGroot Dairy owns the portion of the grass strip in question, we conclude that summary judgment was proper because the Lindseys have failed to designate any evidence suggesting that DeGroot Dairy recklessly, knowingly, or intentionally damaged or defaced their property, and therefore no issue of material fact remains.

### C. Whether an Issue of Material Fact Remains Precluding Summary Judgment on the Lindseys' Intentional Infliction of Emotional Distress Claim

■■■■■ Finally, the Lindseys contend that the trial court erred in granting summary judgment in favor of DeGroot Dairy with regard to their claim of intentional infliction of emotional distress. "The tort of intentional infliction of emotional distress was first recognized as a separate cause of action without the need for an accompanying tort in *Cullison v. Medley*, 570 N.E.2d 27 (Ind.1991)." *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind.Ct.App. 2005), *trans. denied.* In *Cullison*, our Supreme Court defined the tort of intentional infliction of emotional distress as: "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." 570 N.E.2d at 31. "It is the intent to harm the plaintiff emotionally which constitutes the basis for the tort of intentional infliction of emotional distress." *Id.* "The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Id.* "The requirements to prove this tort are rigorous." *Id.* In *Bradley v. Hall*, 720 N.E.2d 747, 752–53 (Ind.Ct.App. 1999), we quoted with approval the following comment:

.The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

(quoting Restatement (Second) of Torts § 46, cmt. D). "Intentional infliction of emotional distress is found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Lachenman*, 838 N.E.2d at 457. "In the appropriate case, the question can be decided as a matter of law." *Id.*

■■■■ Here, considering the facts in the light most favorable to the Lindseys as the non-moving parties, we can conclude as a matter of law that DeGroot Dairy's actions do not constitute "outrageous" behavior as contemplated by the narrow definition adopted from the Restatement. DeGroot Dairy operated a CFO dairy operation that was largely, if not entirely, compliant with Indiana regulations and a farming operation that does not appear to be unlike any other farming operation one might expect to find operating in Indiana. In other words, however negligent DeGroot Dairy may have been in operating its CFO specifically and its farming operation generally, none of the designated facts suggest that it was so extreme in degree as to go

beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized society. *See Lachenman,* 838 N.E.2d at 457. Moreover, there is also nothing in the record which would support a reasonable inference that DeGroot Dairy intended to cause emotional distress to the Lindseys by its behavior. *See Cullison,* 570 N.E.2d at 31 (establishing that intent to cause harm to plaintiff constitutes basis for the tort of intentional infliction of emotional distress). Therefore, we conclude that the trial court did not err in granting summary judgment to DeGroot Dairy upon the Lindseys' claim of intentional infliction of emotional distress. *Lachenman,* 838 N.E.2d at 457.

In sum, having concluded that the Lindseys have failed to designate any evidence contrary to the trial court's determination that the Indiana Right to Farm Act applied to the instant matter and barred the Lindseys' nuisance claim against DeGroot Dairy, and that summary judgment was proper because no issue of material fact remained on the Lindseys' criminal trespass, criminal mischief, or intentional infliction of emotional distress claims, we affirm the summary judgment of the trial court.[5]

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and MAY, J., concur.

---

**5.** To the extent that the Lindseys contend that the trial court erred in granting summary judgment in favor of Egberdien DeGroot in light of the parties dispute regarding her involvement in the ownership and operation of DeGroot Dairy, we note that our conclusion that the trial court's award of summary judgment in favor of the DeGroot Dairy was proper applies to all of the DeGroot parties.

