Jeffery T. CURRY and Davina L. Curry, Appellants–Respondents,

v.

Andrew WHITAKER and Grace Santa–Cruz Chavez, Appellees–Petitioners.

No. 49A02–1004–CC–398.

Court of Appeals of Indiana.

Jan. 25, 2011.

Davina L. Curry, The Curry Law Firm, LLC, Indianapolis, IN, Attorney for Appellants.

C. Warren Nerz, Nerz Walterman, P.C., Indianapolis, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Jeffery T. Curry and Davina L. Curry appeal the trial court's grant of summary judgment in favor of Andrew Whitaker and Grace Santa–Cruz Chavez on the Currys' complaint for invasion of privacy by intrusion, invasion of privacy by false light, and intentional infliction of emotional distress. Finding no genuine issue of material fact and that Andrew and Grace are entitled to judgment as a matter of law, we affirm the trial court.

### Facts and Procedural History[1]

At all relevant times, the Currys, husband and wife, were next door neighbors to Andrew and Grace, husband and wife, in the Indianapolis subdivision, Eden-

---

1. We point out several violations of the Indiana Appellate Rules committed by Appellants. Appellants' Statement of Facts is numbered and is not in narrative form, in violation of Indiana Appellate Rule 46(A)(6)(c). Appellants have compounded this problem by providing several back-to-back sentences of "facts," followed by extremely lengthy string citations to the record, leaving us to wonder and decipher which citation to the record goes with which "fact." Finally, Appellants' Brief contains an approximately twenty-three-page quotation of the record.

In addition, Appellants' Appendix does not contain a copy of Andrew and Grace's motion for summary judgment, the Currys' response to it, or either party's designation of evidence, in violation of Appellate Rule 50(A)(2)(f). This information is critical in a summary judgment case. As a result, Andrew and Grace had to file an Appellees' Appendix containing these materials.

wilde. Grace was the president of The Edenwilde Homeowners' Association. In 2007, Grace filed a report with the Indianapolis Metropolitan Police Department alleging that Jeffery sent her threatening emails in her capacity as HOA President and that Jeffery told people in the neighborhood that he carried a gun. Grace reported that she felt threatened as a result of Jeffery's actions. In 2008, Grace filed another police report that Jeffery was throwing cigarette butts onto their property.

In addition, Andrew and Grace suspected that Jeffery was vandalizing their property. As a result, in the spring of 2008, they installed two surveillance cameras on their home. One of the cameras was aimed at the common yard between the two homes, part of the Currys' front yard, the Currys' driveway, and the corner of the Currys' garage. On March 31, 2008, a surveillance camera captured a person that Andrew thought looked like Jeffery damaging a home security sign that was located on Andrew and Grace's property. That night, Andrew and Grace showed the video of the incident to an IMPD officer, who could not identify the vandal. Andrew and Grace then showed the tape to IMPD Officer Michael Croddy, who lived in Edenwilde and was a HOA board member, and said that they wanted to pursue charges against Jeffery. Probable cause for misdemeanor criminal mischief was found, and Jeffery was arrested and charged with criminal mischief. Following a bench trial, however, Jeffery was acquitted.

On April 2, 2008, the Currys filed a complaint against Andrew and Grace. The complaint alleged three counts: (1) invasion of privacy by intrusion; (2) invasion of privacy by false light; and (3) intentional infliction of emotional distress. Andrew and Grace responded with a counterclaim. In March 2009, Andrew and Grace filed a motion for summary judgment on the Currys' complaint. A hearing was held, and in March 2010, the trial court entered summary judgment in favor of Andrew and Grace on the Currys' complaint. The Currys now appeal.

## Discussion and Decision

The Currys contend that the trial court erred by entering summary judgment in favor of Andrew and Grace on their complaint because genuine issues of material fact exist for the trier of fact to determine. When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind.2009). Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Dreaded, Inc.*, 904 N.E.2d at 1269–70. In answering these questions, the reviewing court construes all factual inferences in the nonmoving party's favor and resolves all doubts as to the existence of a material issue against the moving party. *Dreaded, Inc.*, 904 N.E.2d at 1270. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.* Once the movant satisfies the burden, the burden shifts to the nonmoving party to designate and produce evidence showing the existence of a genuine issue of material fact. *Id.*

## I. Invasion of Privacy by Intrusion

■■■ The Currys contend that the trial court erred by entering summary judgment in favor of Andrew and Grace on their invasion of privacy by intrusion claim. To establish a claim for invasion of privacy by intrusion, the plaintiff must

demonstrate that there was an intrusion upon his or her physical solitude or seclusion, such as by invading his home or other quarters or by conducting an illegal search. *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991) (citing W. Prosser & J. Keeton, *Prosser and Keeton on Torts* § 117 (5th ed. 1984)); *Ledbetter v. Ross*, 725 N.E.2d 120, 123 (Ind.Ct.App.2000) (citing Prosser & Keeton, *supra* § 117). To rise to the level of tortious conduct, "the intrusion must be something which would be offensive or objectionable to a reasonable person." *Ledbetter*, 725 N.E.2d at 123.

Indiana courts have narrowly construed the tort of invasion of privacy by intrusion. *Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1280 (Ind.Ct.App.2002), *reh'g denied.* According to the Indiana Supreme Court, the tort of invasion of privacy by intrusion requires intrusion into the plaintiff's private "physical" space. *Cullison*, 570 N.E.2d at 31 (cited in *Creel*, 771 N.E.2d at 1280). There have been no cases in Indiana in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home. *Id.; see also* 62A Am. Jur.2d *Privacy* § 40 n. 4 (2005) (noting that in Indiana, an essential element of invasion of privacy by intrusion is that the intrusion must be physical).

The Currys argue that Andrew and Grace invaded their personal physical solitude by filming their comings and goings from their home and by engaging in collusive conduct with their law enforcement friend, Officer Croddy, who then entered their residence to investigate Andrew and Grace's complaint. Appellant's Reply Br. p. 8–9. They allege that Andrew and Grace filmed activity that was not meant to be observed by a large number of individuals, that is, their comings and goings were not for public display and they had

an expectation of privacy in these activities. Curiously, however, the Currys do not direct us to either video or photographic evidence in the record of Andrew and Grace's recordings of their comings and goings. In any event, it is undisputed that the surveillance camera at issue on appeal was aimed only at the Currys' front yard, the Currys' driveway, and the corner of the Currys' garage—all exterior areas. These outside areas can be observed by anyone passing by or living near the Currys' house. The cameras were neither aimed at nor did they capture the inside of the Currys' home. A defendant may be liable for intrusion into private affairs if he or she has engaged in conduct that resembles watching, spying, prying, besetting, or overhearing, *and* the intrusion has invaded an area which one normally expects will be free from exposure to the defendant. 62A Am.Jur.2d, *supra* § 44. An example of an actionable intrusion upon seclusion includes peering into the windows of a private home. *Id.; see also Creel*, 771 N.E.2d at 1281 (holding that investigator who covertly videotaped plaintiff playing the piano during a church service attended by over 140 people, which was open to the general public and at which no signs were posted indicating that videotaping was prohibited, did not violate plaintiff's physical solitude and seclusion because "it simply captured activity that was open to the public, observed by many, and which [the investigator] or any other of the church attendees could have testified to witnessing at trial. Moreover, it is undisputed that [the investigator] confined his videotaped surveillance to areas of the church that were open to the public."); *Cullison*, 570 N.E.2d at 31 (concluding that while an uninvited invasion of the inside of plaintiff's home could constitute a claim for invasion of privacy by intrusion, harassment of plaintiff in a restaurant or on the public street outside his home could not).

The surveillance cameras did not intrude into the Currys' private physical space.

■ As for the Currys' claim that a police officer came to their house to investigate Andrew and Grace's report of vandalism, they have neither alleged nor proven that the officer did not have a right to be there, especially since probable cause was found for Jeffery's arrest. *See Cullison,* 570 N.E.2d at 31 (holding that plaintiff must demonstrate that there was an intrusion upon his or her physical solitude or seclusion, such as by conducting an illegal search). Based on the undisputed facts, the trial court properly entered summary judgment on the Currys' claim of invasion of privacy by intrusion.[2]

## II. Invasion of Privacy by False Light

■ The Currys contend that the trial court erred by entering summary judgment in favor of Andrew and Grace on their invasion of privacy by false light claim. The tort of invasion of privacy is similar to defamation but reaches different interests. *Newman v. Jewish Cmty. Ctr. Ass'n of Indianapolis,* 875 N.E.2d 729, 743 (Ind.Ct.App.2007) (citing *Lovings v. Thomas,* 805 N.E.2d 442, 447 (Ind.Ct.App.2004)), *trans. denied.* Defamation reaches injury to reputation, while privacy actions involve injuries to emotions and mental suffering. *Id.* The tort of invasion of privacy by false light is described as publicity that unrea-

sonably places the other in a false light before the public. *Id.* (citing *Lovings,* 805 N.E.2d at 447). We turned to the Restatement of Torts to define this tort in *Branham v. Celadon Trucking Services, Inc.:*

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

744 N.E.2d 514, 524 (Ind.Ct.App.2001) (quoting Restatement (Second) of Torts § 652E (1977)), *trans. denied.* A plaintiff cannot succeed on an invasion of privacy by false light claim if the alleged communication is accurate. *Id.* at 525; *see also* Restatement, *supra* § 652E cmt. a ("[I]t is essential ... that the matter published concerning the plaintiff is not true."). The Restatement also provides that "publicity" occurs when

> the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The dif-

---

**2.** To the extent that the Currys argue that there was an emotional intrusion into their solitude, we note that they do not develop the issue until their reply brief. In addition, no Indiana court has yet to officially recognize it. *See Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 524 (Ind.Ct.App.2001) ("The parties debate whether such intrusion must be into the plaintiff's private physical space, or whether an instrusion [sic] into a person's emotion[al] solace will suffice.... We need not resolve the parties' dispute, however, because under either analysis Branham's claim fails."), *trans. denied; see also Creel,* 771

N.E.2d at 1280 (noting that in *Branham,* this Court "declined to address whether emotional intrusion" would satisfy the claim but holding that "even if intrusion upon one's emotional privacy would suffice to establish the tort of invasion of privacy by intrusion, we would not find such intrusion in this instance."). The Currys have not provided us with cogent reasoning as to why Indiana should now recognize intrusion into a plaintiff's emotional solace. Given the lack of argument in the Currys' briefs, we decline to analyze whether Indiana should recognize it in this case.

ference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

Restatement, *supra* § 652E cmt. a (referring to the definition of "publicity" found in § 652D cmt. a). Finally, according to the Restatement, the rule

applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.

Restatement, *supra* § 652E cmt. c.

 The Currys argue that Andrew and Grace made false police reports and reported false information "to law enforcement officers[ ] and the community in which [they] reside" without regard for the falsity of the statements being uttered. Appellant's Br. p. 14. As the Currys explain on appeal:

[Andrew and Grace] did not like [them]. Because [Andrew and Grace] did not like [them], they attributed every incident which occurred around their home, whether innocent or not, to [them]. Based on nothing other than their dislike of [the Currys], they began a campaign to cast [the Currys] in a false light in the community.

*Id.* at 38. For instance, the Currys allege that Grace filed at least two police reports and Andrew communicated to the Currys' immediate neighbors and members of the HOA that Jeffery was responsible for the vandalism, ranging from discarding cigarette butts and dog feces to damaging a home security sign on their property, when they did not have direct proof. The

Currys also point out that it was only with the assistance of neighbor and HOA board member Officer Croddy that charges were filed against Jeffery.

Andrew and Grace respond that their communications concerning the Currys were true and even if they were not, the Currys do not point to anything in the designated evidence that either Andrew or Grace communicated the allegedly false statements to the public. We first note that the Currys do not point to much designated evidence of Andrew's and Grace's "publicity" of the allegedly false statements. *See* Appellants' Br. p. 7 (para.9), 8 (para.12), 9 (para.14). What little evidence the Currys highlight of Andrew's and Grace's publicity to non-law-enforcement personnel involves Grace discussing Jeffery's emails to her to another HOA board member, which resulted in an email being sent to Jeffery to direct any future emails to the HOA's attorney, and Andrew perhaps mentioning at a board meeting "cigarettes, dog poop next to the Currys' yard." Appellants' App. p. 98, 127. In fact, both Andrew and Grace denied discussing their personal business with others. And although there is designated evidence in the record that Grace filed two police reports and both Andrew and Grace sought the assistance of at least two police officers in order to press charges against Jeffrey, these communications cannot be construed as "communicating ... to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Both Andrew and Grace said that their discussions with the police officers, although one of them happened to be a friend, were in the officers' professional capacity. These communications, in fact, led to a finding of probable cause for misdemeanor criminal trespass, a charge being filed, and a bench

trial. Because the Currys have failed to establish a genuine issue of material fact on the "publicity" element of invasion of privacy by false light, the trial court properly entered summary judgment in favor of Andrew and Grace on this claim.[3]

## III. Intentional Infliction of Emotional Distress

 Finally, the Currys contend that the trial court erred by entering summary judgment in favor of Andrew and Grace on their intentional infliction of emotional distress claim. IIED was first recognized as a separate cause of action without the need for an accompanying tort in the Indiana Supreme Court case of *Cullison v. Medley*, 570 N.E.2d 27 (Ind.1991). *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind.Ct.App.2009); *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind.Ct.App.2005), *trans. denied.* In *Cullison*, our Supreme Court defined the tort of IIED as "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." 570 N.E.2d at 31. "It is the intent to harm the plaintiff emotionally which constitutes the basis for the tort of intentional infliction of emotional distress." *Id.* The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. *Id.* The requirements to prove this tort are "rigorous." *Id.* We quoted the following comment from the Restatement with approval in *Bradley v. Hall:*

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

720 N.E.2d 747, 752–53 (Ind.Ct.App.1999) (quoting. Restatement (Second) of Torts § 46 cmt. d (1965)). IIED is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind. *Lindsey*, 898 N.E.2d at 1264. In the appropriate case, the question can be decided as a matter of law. *Id.*

The Currys argue that Andrew's and Grace's conduct in installing surveillance cameras, filing police reports, "wag[ing] a campaign in the community against" them, and "collusion" with Officer Croddy is "outrageous." Appellants' Reply Br. p. 13. Considering the facts in the light most favorable to the Currys as the nonmoving parties, we can conclude as a matter of law that Andrew's and Grace's actions do not constitute "outrageous" behavior as contemplated by the narrow definition adopted from the Restatement. That is, Andrew and Grace had been experiencing

---

**3.** Although the Currys rely on the Ohio case of *Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007), to support its position, we find that the case is neither binding on us nor relevant. Rather, it only establishes that Ohio recognizes the tort and then remanded the case. *Id.* at 1059. The plaintiff's claim for invasion of privacy by false light was based on the distribution of handbills to the public. *Id.* at 1052.

damage to their property. Based on the tone of emails that Jeffery had sent to Grace in her capacity as HOA President and other circumstantial evidence, Andrew and Grace believed that Jeffrey was responsible. Grace also filed police reports. In addition, Andrew and Grace installed surveillance cameras on their house, which captured only the exterior of a portion of the Currys' property. Andrew decided he wanted to press charges against Jeffrey when the surveillance video showed whom he believed to be Jeffrey damaging his home security sign. Although one officer could not identify Jeffrey on the video, Andrew and Grace sought assistance from neighbor and HOA board member Officer Croddy. Probable cause for misdemeanor criminal mischief was found, and Jeffrey was arrested, though he was acquitted following a bench trial. None of the designated facts suggest that Andrew's and Grace's conduct was so extreme in degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized society. Therefore, we conclude that the trial court properly granted summary judgment in favor of Andrew and Grace on the Currys' IIED claim.

Affirmed.

BAKER, J., and BARNES, J., concur.