## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 13 2017, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Brian S. Moore | Trenton W. Gill |
| Indianapolis, Indiana | Bailey L. Box |
| | Reminger Co., LPA |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian S. Moore, | January 13, 2017 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 49A04-1605-CT-955 |
| v. | Appeal from the Marion Superior Court |
| | The Honorable James A. Joven, Judge |
| Del Anderson, | The Honorable Kimberly Dean Mattingly, Magistrate |
| *Appellee-Defendant.* | The Honorable Shannon L. Logsdon, Commissioner |
| | Trial Court Cause No. 49D13-1502-CT-3909 |

**Bailey, Judge.**

# Case Summary

[1] Pro-se Appellant Brian S. Moore ("Father") appeals the denial of his motion to correct error, which challenged a grant of summary judgment in favor of Appellee-Guardian Ad Litem Del Anderson ("the GAL") upon Father's claim of intentional infliction of emotional distress arising from the GAL's alleged perjury in custody modification proceedings involving Father's children with Kristy Moore ("Mother"). Father presents the sole restated and consolidated issue of whether summary judgment was improvidently granted. We affirm.

# Facts and Procedural History

[2] Father and Mother were divorced in 2009 and agreed to share the legal and physical custody of their children, with Father having somewhat less than equal parenting time. In 2010, Mother filed a petition to modify custody, seeking sole legal and physical custody. Father also filed a petition for modification, requesting equal parenting time, a modified child support order based upon equal parenting time, an order that the children remain in a private school, and a continuation of an agreed-upon restriction of the maternal grandmother's visitation with the children.

[3] The parents appeared for an evidentiary hearing on September 19, 2011 and each testified. At the conclusion of this testimony, the trial court found insufficient evidence for an immediate modification but expressed concern

about parental inability to communicate. The hearing was continued to permit the appointment of a GAL.

[4] On August 22, 2012, an interim hearing was conducted at which Mother testified that she had enrolled the children in a public school in Pendleton. The GAL testified and opined that this was an appropriate change of schools. The trial court found Mother in contempt for having made the school change without court authorization, but ordered that the children would remain in Pendleton Elementary School. Because of the distance between the parental homes, this necessitated a modification of parenting time. Father was to have the children each weekend and alternating Mondays.

[5] The previously continued evidentiary hearing, which began in September 2011, recommenced on February 5, 2013, after a custody evaluation and the GAL's report had been filed with the court. The custody evaluator recommended that Mother have custody with Father having parenting time consistent with the Indiana Parenting Time Guidelines. The GAL, in his report, made the same recommendation.

[6] The hearing was continued and the trial judge sua sponte recused herself. The final day of the modification hearing was April 5, 2013, with a special judge presiding. Father proposed that the parenting time arrangement continue unchanged, with the exception of his giving Mother one weekend per month with children.

[7] During the custody hearing, Father took issue with three statements in the GAL report. He strenuously challenged the GAL's statements that Father had maligned attorneys and judges, that Father had cried during an interview, and that Father's conduct had prompted a lockdown at Pendleton Elementary School. Father presented testimony that local law enforcement and school administration did not characterize the heightened security measures taken at the school as a lockdown. He also submitted into evidence a recording of his interview with the GAL and elicited the GAL's admission that Father was not heard on the recording to malign judges and attorneys. The GAL re-iterated during cross-examination that Father had cried. Father moved, unsuccessfully, to exclude the GAL report on grounds that it contained substantial misrepresentations.

[8] On June 6, 2013, the trial court issued an order denying Mother's request for sole physical and legal custody of the children. Parenting time was modified to provide that Father would have parenting time each weekend during the school year, except one weekend per month. Father was to have mid-week parenting time of no more than four hours. The order also provided that the maternal grandmother could have unrestricted contact with the children and Father was not to attend the children's medical appointments.

[9] Father filed a motion to correct error, which was denied. He then appealed. *See Moore v. Moore*, No. 49A04-1308-DR-401 (Ind. Ct. App. May 9, 2014). The Court remanded the matter to the trial court for a recalculation of Father's child support obligation. With respect to the parenting time modification,

grandparent access, and medical appointment restriction, the Court affirmed the trial court's order. Slip op. at 5-6. Father sought transfer to the Indiana Supreme Court, which was denied on November 20, 2014.

[10] On February 5, 2015, Father filed a complaint against the GAL, Child Advocates, Inc., and attorney Cynthia Dean ("Dean"). His claim against the GAL was one of intentional infliction of emotional distress;[1] he asserted that the GAL had committed perjury in retaliation for Father's filing a disciplinary complaint against Dean. According to Father's complaint, his overnights with his children had been reduced from 182 to 110 per year, increasing his child support obligation. Allegedly, Father had expended over $4,300.00 to pay for transcripts and appellate filing fees and had lost work hours. He requested unspecified monetary damages.

[11] On April 6, 2015, the defendants filed a motion for summary judgment. At the conclusion of a hearing conducted on May 11, 2015, summary judgment was granted in favor of Dean and Child Advocates, Inc. With regard to the claim against the GAL, the trial court concluded that Indiana Code Section 31-17-6-8, providing immunity to a GAL for professional conduct, does not immunize gross misconduct. The trial court reasoned that the allegation of perjury alleged

---

[1] Although Father's complaint is not a model of clarity, in open court he described his claim as one of "intentional infliction of emotional distress because they knew that I was self-employed." (Tr. at 34.)

gross misconduct and presented a factual issue not resolved by the sparse designated materials.

[12] On September 11, 2015, the GAL filed a second motion for summary judgment and his designation of materials, including materials from the custody proceedings and appeal. At the hearing conducted on January 4, 2016, the GAL argued that the issue of his credibility had been determined in prior proceedings, specifically, the custody modification hearing and appeal. On February 22, 2016, the trial court granted summary judgment to the GAL on grounds of issue preclusion.[2]

[13] Father filed a motion to correct error, which was denied. This appeal ensued.

# Discussion and Decision

[14] Generally, we review a trial court's ruling on a motion to correct error for an abuse of discretion. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*. However, to the extent the issues raised on appeal are purely questions of law, our review is de novo. *Id.*

---

[2] Issue preclusion, or collateral estoppel, bars subsequent re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent lawsuit, even if the second adjudication is on a different claim. *National Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012). There are three requirements for application: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action. *Id.*

Here, the motion to correct error challenged a grant of summary judgment. Our supreme court has set out the applicable standard of review on summary judgment as follows:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of … the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).
>
> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

Father has alleged that the GAL committed perjury when he "fabricated and provided false evidence in a written report," and "fabricated and presented false

testimony in a hearing for a custody modification." (App. at 28.) Specifically, in his written report, the GAL had used the term "lock-down" to characterize a heightened-security event at the children's school – occasioned by Father's warning to "be ready" because he claimed to be "coming back with force." (Amended App. at 30.) Other witnesses denied that the heightened security measures – extra police patrol and school staffing at the door – amounted to a lock-down. Also, the GAL had claimed that Father had flowing tears, and had used such terms as "crooks, liars, thieves, or belly-crawlers" to describe lawyers and judges. (App. Vol. 3 at 34.) However, the derogatory references were not heard on Father's recording of his interview with the GAL. According to Father, the rendering of demonstrably false testimony amounted to intentional infliction of emotional distress.

[17] In *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991), our supreme court defined the tort of intentional infliction of emotional distress as conduct by "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." The intent to harm the plaintiff emotionally constitutes the basis for the tort, and it is found only where the conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind. *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. *Id.*

[18] In *Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999), a panel of this Court quoted Restatement (Second) of Torts § 46 cmt. D with approval:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

[19] In the appropriate case, the question of whether actions constitute "outrageous" behavior can be decided as a matter of law. *Curry*, 943 N.E.2d at 361. The instant matter – where the conduct at issue is the presentation of evidence in a courtroom where decorum was maintained and no witness was admonished – is such a case.

[20] The designated materials indicate that Father urged the trial court to find that substantial misrepresentations were in the GAL report; we cannot say that the trial court entertained a specific allegation of willful perjury during the course of the custody proceedings. However, credibility determinations were necessitated as the GAL provided testimony and documentary evidence and those written

and oral representations were vigorously challenged. Father presented witnesses to contradict the use of the term "lock-down." He presented a recorded interview that did not include his use of derogatory language. The GAL was subjected to cross-examination on his report; he acknowledged the lack of recorded evidence of derogatory remarks and conceded that others did not find the term "lock-down" applicable. However, he did not retreat from his claims that there had been a heightened-security event, or that Father had cried and used derogatory language to describe lawyers and judges. Father asked that the trial court strike the GAL report for alleged substantial misrepresentations; the motion was denied.

[21] In the face of conflicting evidence, the trial court exercised its role as fact-finder and accepted or rejected representations. Ultimately, Mother was granted some portion of the modification terms she sought. Father points to the absence of an explicit finding that the GAL's testimony and report were credible and argues that the evidence may have been rejected. However, in the event that the GAL evidence was found lacking in credibility and not relied upon, Father would have suffered no harm. The modification order would have been produced independent of the GAL evidence.

[22] Nonetheless, even assuming a lack of credibility on the part of a witness, this is not tantamount to extreme and outrageous behavior beyond the bounds of decency or to the gross misconduct exception to civil immunity contemplated by Indiana Code Section 31-17-6-8. Father has essentially launched a collateral attack upon the process leading to the modification order, as opposed to

addressing behavior beyond societal tolerance. The GAL is entitled to summary judgment upon the claim for intentional infliction of emotional distress.

# Conclusion

[23] The trial court properly granted summary judgment in favor of the GAL.

[24] Affirmed.

Najam, J., and May, J., concur.